UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                              CASE NO. 03-80630

v.                                                    PAUL D. BORMAN
                                                      UNITED STATES DISTRICT JUDGE

BRIAN COURTNEY JOHNSON,

       Defendant,
_____/

## ORDER DENYING MOTION TO SUPPRESS

**FACTUAL BACKGROUND SUMMARY**

     On June 15, 2003, two police officers responding to an auto accident dispatch at around 1a.m., came upon a seriously damaged car at the intersection of Dexter and Davison streets in the City of Detroit. The other vehicle had left the scene of the accident. The officers were also responding to a separate shots-fired dispatch in that vicinity. The officers then drove the area and found a severely damaged car, with blood in the interior, about 1 mile west, near Livernois and Davison. The officers went into the D&L Party Store at Davison and Livernois to try to find the driver(s). They were told that an injured male wearing black clothing had recently left the store, after unsuccessfully seeking a ride home.

     Thereafter, a few minutes later, in returning toward the scene, they saw Defendant Brian Courtney Johnson walking east down Davison Road in the early a.m. wearing black clothing, with injuries and blood on his head.

Upon encountering the policemen, Defendant told them that he had been mugged. The officers, who had previously been at the scene of the accident where they had seen serious damage to the G.M. vehicle remaining at the scene, and the serious damage and blood in a second car, did not believe Defendant's story. Specifically, they believed that Defendant, wearing black clothes and bleeding, had been the driver of one of the cars involved in the auto accident, had left the scene, and was now returning from a western direction, where the other car had been discovered.

The officers, having encountered Defendant, an injured person on the street in the middle of the night in conjunction with their response to the auto accident call, decided to convey the Defendant in their car, one-quarter of a mile, back to the scene of the auto accident where they could get information for their accident reports, and because EMS had been called to the scene, get responding EMS medical attention for Defendant, if necessary.

For safety reasons, the officers patted down Defendant prior to placing him in the rear seat of the police car to return to the accident scene. During the pat down, they discovered a firearm in his possession, which forms the basis for the instant charge. The officers thereafter transferred Defendant to the scene of the auto accident, and subsequently to the 10th Precinct Police Station where, in booking him, they discovered yet another firearm in his possession that had not been discovered in the initial pat down. Because of his head injuries and bleeding, the Lieutenant at the 10th Precinct sent him to Detroit Receiving Hospital for treatment and return.

Defendant filed a motion to suppress the seizure of the firearms on the ground that the police did not have reasonable suspicion to stop and frisk the Defendant at the initial stop and thus, that firearm should be suppressed, and the later discovered firearm should be suppressed as

fruit of the poisonous tree. The Court held two evidentiary hearings; July 15 and 21, 2005.

**RELEVANT TESTIMONY**

Detroit Police Officer Jevon Johnson testified at the evidentiary hearing held on July 15, 2005, that he received dispatches for shots fired, fleeing the scene at a high rate of speed, and a severe auto accident.

Officer Johnson testified that when he approached the accident scene, he saw a severely damaged car – which was not movable. P.9. He then proceeded to look for the other car involved in the accident. His investigation took him to another vehicle over a mile away, near Dexter and Livernois Avenues, which had a punched ignition and severe damage, including a spider web on the windshield, and blood everywhere. P.11.

Officer Johnson said he was looking for the driver of that stolen car, likely involved in the auto accident. P.11.

Officer Johnson and his partner Christopher Richardson then went to D&L Liquor Store on Davison and Livernois Avenues looking for a suspect. They were told that a bleeding man asked for a ride home, and that he was walking east on Davison and wearing black clothing. Pp. 12-13.

The officers drove east on Davison and saw Defendant – wearing all black, and bleeding. P.13. He thought that the person he encountered was the driver of the second car in the accident, the one that left the scene and was discovered near Dexter and Livernois, the direction from which Defendant was walking:

> Because he's severely injured from head [sic] in the vicinity of the
> area of the accident, and his injuries are consistent with the
> damage done to this vehicle over here, the Chrysler product.

Jevon Johnson Pp. 13-14.  Officer Johnson thought Defendant needed medical help.  Officer Johnson patted Defendant down prior to putting him in the police car from the officers' safety – they were "definitely going to detain him in conjunction with the stolen car and/or the accident . . . ." P.19.

Officer Johnson's partner, Christopher Richardson testified that when they encountered Defendant, he saw blood on his face, and he appeared to be disoriented and intoxicated by alcohol.  Hearing, July 15, 2005, Richardson TR. P.36.  He smelled liquor on Defendant's breath and his eyes "were bloodshot as if he was drinking."  TR P.36.

EMS Technician Steve Strong testified on July 21, 2005 that he was dispatched at 1:37 a.m. to the auto accident scene at Dexter and Davison, arrived at the scene of the accident at 1:45 a.m., and left at 1:53 a.m..  Strong's report form indicated that he did not treat the Defendant: "no need for EMS", "no obvious acute distress", when he encountered Defendant, he was in the custody of the police, and "says he wasn't injured in motor vehicle accident and denies injury/illness".  July 21, 2005 Hearing Transcript, testimony of EMS Tech. Steve Strong, P.9.

Lieutenant William Brown of the Detroit Police Department testified that he was on duty at the 10th Precinct on the midnight shift on June 15, 2003, and did an intake report on Defendant Brian Johnson when he was brought in.  He testified that his report listed "a sustained laceration and cuts to his face and scalp, and I have that it was received from a car accident, and I had ordered that he be conveyed to Detroit Receiving Hospital . . . .".  Lt. Brown testimony, July 21, 2005, P.24.

Lt. Brown testified that Defendant told him that he had received his injuries in a car accident.  *Id*. at P.25.

Government Exhibit B is a mug shot profile of the Defendant taken at the police station which shows facial cuts/lacerations.

Government Exhibit C is the Defendant's statement that evening where he says that he was in an accident, hit his head on a car windshield, and was bleeding from the head when the officers stopped him.

**ANALYSIS**

Police officers sent to investigate a serious auto accident, with one car severely damaged at the scene, and the second car gone, after searching the neighborhood, finding an apparently stolen, severely damaged car, stop at a liquor store, got a description of an injured black male, wearing black clothes, and bleeding from head wounds. The officers then see Defendant walking east on Davison, in an area between the liquor store and the accident scene, wearing black clothing and bleeding from the head. They stop, talk to Defendant; he says he was mugged; they don't buy it, and want to take him to the scene of the accident two-tenths of a mile away, because they have reasonable suspicion to believe he was involved in the accident. Before putting Defendant in their car to drive him back to the scene, at least two tenths of a mile east, they pat down the Defendant to protect themselves in case Defendant is armed. They find a gun.

The Court concludes that all of the police conduct was appropriate. Certainly they had reason to approach him. Seeing his bloodied condition, knowing of the two car severe accident, they had a right to drive him to the accident scene. Certainly, if they were going to put Defendant in the police car, they had a right to pat him down. The only alternative would have been for them to have this bleeding injured suspect, walk the 2/10 mile back to the accident at

5

2a.m. while they drove alongside at 2 miles per hour. It is not reasonable to require the police to do that.

In this case, the stop of Defendant for questioning by the police was reasonable, because the officer was "able to point to specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant that intrusion 'as measured by an objective standard'." *U.S. v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1 (1968):

> In finding reasonable suspicion, "the totality of the circumstances must be taken into account." *U.S. v. Corte*, 449 U.S. 411, 417 (1981)." The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

*Id.* at 466.

In the instant case, the Court finds that given the totality of facts available to the two officers, combined with their specialized training and experience in dealing with auto accidents and bloodied individuals walking down the street at 1a.m., and given their investigation regarding the second car which had a punched ignition, and at the D&L Party Store, permitted them "to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *U.S. v. Marxen*, 410 F.3d 326, 331-32 (6th Cir. 2005). Those inferences and deductions supported their conduct with regard to Defendant.

Here the officers had reasonable suspicion to believe that Defendant was involved in the accident, could therefore return him to the scene in their patrol car, and could pat him down prior to placing him behind them in the rear seat of the patrol car. When that pat down produced a

firearm, the seizure of that firearm did not violate Defendant's rights under the Fourth Amendment to the Constitution of the United States.

Defendant's Motion to Suppress is denied.

SO ORDERED.

                                            s/Paul D. Borman
                                            PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

Dated:  August 18, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 18, 2005.

                                            s/Jonie Parker
                                            Case Manager